IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **JAMES A. BURNS,**<br><br>        Plaintiff,<br><br>v.<br><br>**GRANITE SCHOOL DISTRICT,**<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10CV179DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Granite School District's Motion for Summary Judgment and Plaintiff's Motion and Memorandum in Opposition to Defendant's Motion for Summary Judgment, Motion to Strike, and Motion in Limine.  On September 28, 2011, the court held a hearing on the motions.  Plaintiff was represented by Michael D. Bassett, and Defendant was represented by Akiko Kawamura.  At the conclusion of the hearing, the court took the motions under advisement.  Having fully considered the motions, memoranda, affidavits, and exhibits submitted by the parties and the facts and law relevant to the motions, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff James A. Burns is currently a fifth grade teacher at Oquirrh Hills Elementary School.  He has been employed with Granite School District ("the District") since 2003.  Burns brought this complaint alleging gender and age discrimination in connection with his October 2007 application for several vice principal and principal openings within the district, and

asserting hostile work environment and retaliation with respect to the conduct of his supervisor at Oquirrh Hills Elementary, Principal Jane McClure.  At the September 28, 2011 motion hearing in this case, Plaintiff withdrew his retaliation claim.

After working for federal law enforcement, the United States Postal Service, and the Department of Homeland Security for many years, Burns decided to pursue a teaching license through Alternative Route to Licensure.  Burns began working as a substitute and contract teacher for the District in 2003.  In the fall of 2004, the District hired him as a fifth grade teacher at Oquirrh Hills, and he has been employed in that position since that time.  At the time he was hired, his supervisor was the Principal at Oquirrh Hills, Jane McClure.  She continued to be Oquirrh Hills' principal until she was replaced by Vicki Ricketts in 2007.

In October 2007, the District advertised openings for Elementary Principal, Elementary Vice-Principal, Junior High Principal, and Secondary Vice-Principal.  Burns applied for all of the positions with one application.  The District received 101 applications for the positions.  All applicants for the positions participated in an initial screening process that included four steps: (1) threshold screening of application and resume for minimum requirements; (2) Gallup Principal Insight Leadership Examination; (3) writing assessment; and (4) two confidential supervisor ratings.  Each step was given points and applicants had to score above 240 to proceed past the initial screening process to the second round of the application process.

Burns scored 77 points on his Gallup Principal Insight Exam, received a 2 on his writing sample, and received a 54 out of 100 rating from Jane McClure and a 74 out of 100 rating from Vicki Ricketts on his supervisor ratings.  His total score was 207, which fell below the 240 point threshold to proceed to the second round for an interview.

Burns initially identified two other individuals who were appointed to administrative

positions as similarly situated candidates. However, the second individual did not apply in the 2007 pool and Burns has ceased arguing that he is similarly situated. The other person, Tysen Fausett, was also a teacher at Oquirrh Hills who applied for the administrative positions in 2007. Fausett scored a 59 on his Gallup Principal Insight Exam, received a 3 on his writing sample, and received a 96 and 100 on his supervisor ratings. Fausett was rated by Vicki Ricketts and a principal from another school where he worked. Fausett was not rated by Jane McClure even though she would have been his second most recent supervisor. The District admits that the ratings were done by the two most recent supervisors. But, in Fausett's case, McClure was skipped and a previous supervisor did the rating. The District states that this must have been an oversight or error in sending out the request for the supervisor ratings. Fausett was 35 years old when he applied for the administrative positions. He proceeded through the application process and was successful in obtaining a position as Assistant Principal at Copper Hills Elementary.

During Burns' first year of teaching at Oquirrh Hills, he began dating a coworker, Pat Crosby, who was a Title I aide. Burns and Crosby did not tell anyone at the school that they were dating. However, they announced their engagement on the last day of school for the 2004-05 school year. Burns alleges that after this announcement, Principal Jane McClure began treating him differently. He claims that she became much more critical of his work and was "nitpicking." He believes that she was a "woman scorned."

During Burns' first year at Oquirrh Hills, he states that he was friends with Principal McClure. He testified that both McClure and the school's Title I director, Sherrie Spenst, were both very interested in him. He believes that they wanted to date and/or marry him. His belief that they wanted to date and/or marry him is based on how friendly they were with him and their weekly inquiries into what he was doing over the weekend. He states, however, that they never

asked him on a date. Nonetheless, he had "no doubt in his mind" where the question regarding what he was doing over the weekend was going.

Burns testified that during his first year at Oquirrh Hills, he spent a lot of time with McClure. In addition to the regular work day, they both attended several training meetings, and went on a teacher training trip to San Diego. He stated that they talked a lot and McClure made comments about her "nonexistent sex life and social life." Burns also alleges that McClure made frequent comments that he considered to be common "man digs," such as "men don't cry, men don't care." Burns also testified that another teacher told him that McClure told inappropriate jokes about men. He states that the other teacher told him some of the jokes, but he could not remember any of them. McClure did not tell the jokes to Burns.

In addition, Burns states that McClure would comment on and point out other men's tight pants. Burns explained that she would say that they shouldn't wear them and loser pants would be more appropriate. But he believed that by pointing them out, she liked looking at them. He also stated, "I knew where she was going. She was looking at the private parts."

Burns also points out that one day he wore sandals to work and McClure mentioned that he had long toes. He claims that she was quite interested in his toes even though he thinks they were normal length toes. He believes that "where she was going" with her comment about long toes was that other parts of his body would be long as well. He contends that he knew her well and she didn't need to say it for him to understand where she was going with her comment.

At the San Diego conference that McClure and Burns attended with a group of teachers from the school, Burns says that she was "always there" and he could not "shake her." She was at every training and next to him at every meal. McClure testified that she probably did sit next to him, but that she sat next to most of the teachers. Other than her allegedly constant presence,

Burns does not allege any specific conduct on McClure's part during this trip that was inappropriate.

One of the other fifth grade teachers testified that she thought both McClure and Spenst were interested in Burns. She stated that it was based on her own belief, "hall talk," and the fact that McClure was single.

After Burns announced his engagement, he claims that his relationship with McClure went from light to dark. He states that during his second year of teaching, she was very critical of his performance. She gave him notes and began nitpicking, such as inquiring whether he had been at recess duty and telling him that he was letting students bring too many toys to school. Burns also claims that she would yell at him. However, he also testified that she was critical of many teachers and yelled at all the teachers at staff meetings. He testified that she got rid of teachers every year, men and women. Many of the teachers testified that she was critical of nearly all the teachers. Rhonda Hunsaker, a fourth grade teacher, testified that "[e]verybody was scared to death of [McClure]" because "[s]he was just very direct and up front. And if you didn't do it her way, she would scream at you for it." McClure testified that she tried to be supportive of teachers during their first year and then gave more criticism in subsequent years.

Another fifth grade teacher, Teresa Beardall, testified that she thought McClure changed with respect to everyone the year Burns returned to school married. In response to being asked how the school environment changed for Burns the year he returned married, she stated that "[i]t changed for all of us. . . . I really believe that it changed for fifth grade in general. . . . Things – that bubbly friendliness from Jane and Sherrie was – they weren't as outgoing towards me, and definitely towards Jim, too."

When asked about McClure's harassment, Burns identified only the criticism: "Q. So it

5

wasn't harassment of a sexual nature? A. Oh, no.  No, no, no.  It all went back to the last day of that school year of 2005.  It changed from light to dark.  It was sexual harassment.  She was – she was a scorned woman." Burns states that he reported McClure's conduct to her supervisor, Rob Averett at the District.  His complaints to Averett were with regard to McClure's criticisms of his work performance.

As a result of Burns' marriage to his coworker, Burns testified that the Title I director reassigned his wife to the kindergarten hall because she had back problems that made it more difficult for her to work with small children.  After the engagement announcement, McClure called the district regarding any policies regarding husband and wife working in the same school.  She was told that there was no policy prohibiting it, but that it would be a good idea to have them work in different halls.

McClure was not Burns' supervisor in 2007 when she did her supervisor evaluation for his application for the administrative openings.  The Oquirrh Hills principal at the time of his application was Vicki Ricketts.  McClure testified that she gave Burns a fair review.  She acknowledged that the review was hypothetical in nature because she had not observed him in an administrative capacity, but that she had to look at the characteristics he had as a teacher and try to apply them to how he would do as an administrator.  She stated that she considered skills such as his ability to get along with people, taking criticism, classroom management skills, and effective teaching.  She believed that he was a mediocre candidate and deserved a mediocre rating.

Burns claims that Ricketts, who was his current supervisor at the time of his application, had not worked with him long enough to give a valid evaluation.  However, she testified that she had experience with him during his internship and that she had observed him in the classroom

6

and with staff during the first two months of the 2007-08 school year. Burns contends that Rickett's evaluation was contrived because it was not dated or stamped as received by the District. He testified, "there's no doubt in my mind that Rob Averett [the District's Director of Resource Development] or Mike Fraser [the District's Former Director of Human Resources] called her up and told her we need an evaluation to support Jane McClure's low evaluation of Jim Burns to where we can get him out of this system, this process of being chosen for a principal. Not a doubt in my mind about that."

It was customary, however, for the District to get the evaluations of the applicant's last two supervisors. Ricketts testified that she gave Burns "an average score" because "he was average in doing those things." It was an overall impression she had of him based on her observations of him during his internship, in the classroom, and with staff. Rickets testified that she considered his decision-making skills, things that go on in the day-to-day running of the school, following the school discipline plan, and "those sorts of things." She also testified that Burns lacked the ability to collaborate with his teammates.

Burns initially raised an issue regarding a letter from parents in connection with his retaliation claim. However, he decided to withdraw his retaliation claim. He continues ot believe, however, that the letter is evidence relevant to his hostile work environment claim. The letter in question was sent to the District in September 2010, by two parents who were complaining about Burns' treatment of their son, a resource student. Someone from the District investigated the complaint. As a result of the complaint, the district issued a non-disciplinary letter to Burns. Burns believes that the parent complaint was authored by Sherrie Spenst for the parents to sign. However, both parents testified in their depositions that they wrote the letter themselves.

7

## DISCUSSION

### The District's Motion For Summary Judgment

The District moves for summary judgment in its favor on all of Burns' causes of action. As stated above, Burns withdrew his retaliation claim at the hearing on this motion. The court will address each of Burns' other causes of action in turn.

### I. Burns's Gender and Age Discrimination Claims

Burns alleges that he was discriminated against in violation of Title VII of the Civil Rights Act of l964 ("Title VII") and the Age Discrimination in Employment Act (the "ADEA") based on his gender and his age. Both parties agree that the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to these claims. *See McDonnell Douglas*, 411 U.S. at 802-05; *Riggs v. Air Tran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007).

#### A.  Gender Discrimination

The District contends that Burns fails to state a prima facie case of reverse gender discrimination. The Tenth Circuit has held that in a reverse discrimination case, the plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  *Argo v. Blue Cross and Blue Shield, Inc.,* 425 F.3d 1193 (10th Cir. 2006) (citing *Notari v. Denver Water Dep't.*, 971 F.2d 585, 589 (10th Cir. 1992)).

Burns identifies Fausett as the individual who was treated more favorably in the application process.  Since the comparator is male, his appointment is not evidence of gender discrimination.  Additionally, the evidence demonstrates that Burns was not interviewed because his preliminary scores were too low.  It is thus apparent Burns was eliminated from consideration

based on objective, legitimate, and non-discriminatory criteria. Burns claims that his score was too low because of McClure's low supervisor rating. But there is no evidence that McClure's mediocre evaluation is related to Burns' gender. Burns argues that she preferred one of the other male applicants. That is not evidence of gender discrimination.

Burns also alleges that McClure gave him a low evaluation score because she felt scorned when he married Pat Crosby, another woman at the school. However, there is no evidence of that other than Burns' belief. McClure gave reasons for her scores. And, even if McClure's scores had been the same as Ricketts, Burns would not have met the threshold.

It is clear from Burns' own testimony that Principal McClure did not discriminate against Burns based on gender while she was his supervisor. Burns testified that McClure did not single him out for criticism. Rather, Burns contends it was McClure's "modus operandi" to criticize teachers for their performance and "[get] rid of about three teachers a year." Burns also contends he was "the only man," indicating that female teachers were often criticized by McClure. Thus, according to Burns, McClure's criticism was neither directed towards Burns nor males in general.

The fact that McClure became more critical of his performance in his second year does coincide with Burns' marriage to Crosby. However, the other teachers testified that she treated him like she treated many other teachers. In fact, she treated him like she treated many of the women teachers. The other fifth grade teacher, who was a woman, testified that McClure began treating her differently that year as well. That teacher said that she was cold and more professional. Being cold and professional is not evidence of discrimination.

Burns refers to McClure as a woman scorned, but his belief that she was interested in him before he got married is not supported by any of the objective evidence in the case. Asking

someone about their weekend plans does not demonstrate a desire to go on a date or to get married. It is only Burns' subjective opinion that McClure was interested in him. And, the alleged "scorned woman" behavior was two years before the application process.

Burns' argument that Ricketts' evaluation was not fair because she had only known him for two months is not probative of discrimination. In addition, Fausett, Burns' similarly situated male, would have been in the same position. Burns also claims that Ricketts' evaluation was contrived to be like McClure's and to get him out of the process. However, there is no evidence to support his contention.

Burns, therefore, fails to demonstrate evidence of gender discrimination during the application process or while he worked with McClure. Accordingly, the District is entitled to summary judgment on Burns' gender discrimination claim.

### B. Age Discrimination

The District next asserts that Burns has not established that he was the subject of age discrimination. The parties agree that to establish an age discrimination claim, Burns must meet the requirements for a prima facie case of disparate treatment. To establish a prima facie case of disparate treatment, Burns must show (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, and (3) similarly situated employees were treated differently. *Trujillo v. Univ. of Colo. Heath Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). In an age discrimination case, the complainant must prove not only that age was considered but also that age made a difference in the outcome of the employer's decision. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

The District acknowledges that Burns is a member of a protected class for purposes of an age discrimination claim because he was over the age of 40 in 2007 when he applied for the

administrative openings. Burns was 63 years old at the time. However, the District contends that Burns cannot state a prima facie case because he suffered no adverse action and was not treated differently from similarly situated candidates for the administrative positions.

The parties dispute whether Burns was subjected to adverse action when he applied for but was not selected for any of the administrative openings. The Tenth Circuit defines "adverse action" liberally, and the question is determined on a case-by-case basis. *Heno v. Spring/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2003). To be adverse, the challenged action must be a significant change in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Despite his failure to obtain one of the administrative openings in 2007, the District points out that Burns has maintained his job as a fifth grade teacher at Oquirrh Hills Elementary School with full benefits and salary increases and his employment status with the District was not diminished in any way. The District also argues that a change from being a teacher to being an administrator is not a failure to promote because the two are distinct jobs requiring different credentials.

Nonetheless, Burns was not selected for the administrative positions position and his non-selection falls within the adverse action of "hiring." Despite the fact that he had already been hired by the District as a teacher, he was seeking to be hired as an administrator. As the district stated, the position of "teacher" and "administrator" are separate and distinct. The court concludes, therefore, that Burns has established that he was subjected to an adverse action when he was not hired for one of the administrative openings in 2007.

The issue with respect to Burns' age discrimination case, therefore, is whether he has

11

demonstrated that similarly situated individuals were treated differently based on age. When asked on deposition for evidence of age discrimination, Burns testified, "Well, because I was the oldest male at the school, and one of the - I'm sure had to be one of the oldest males applying for the position." Burns states that Fausett is a similarly situated applicant who was successful in obtaining one of the administrative openings and allegedly treated differently. Burns was 35 years old at the time. Burns and Fausett were in the same applicant pool and subject to the same criteria. They were also both teachers at Oquirrh Hills Elementary. Even though part of the initial screening process was to get supervisor ratings from the applicants two most recent supervisors, Fausett's supervisor ratings did not include McClure. Instead of sending the evaluation to McClure, the District sent the evaluation to Fausett's prior supervisor. Burns argues that this shows that Fausett was treated differently.

Burns asserts both that McClure favored Fausett because he was younger and that the District did not have her rate him because they favored Fausett. If McClure favored Fausett because he was younger, then Fausett was potentially disadvantage by the fact that the District sent his evaluation to his previous supervisor. In addition, whether McClure favored Fausett because he was younger is irrelevant given that she did not do a supervisor rating for him.[1]

---

[1] Burns also argues that "[b]y hating the Plaintiff, McClure clearly preferred Fausett, who is a younger man." This, he claims, is disparate treatment on the basis of age. Burns, however, does not cite to anything but his own subjective belief that McClure hated him. Other teachers testified that she was generally critical of all the teachers, and one teacher said that she was not as warm and friendly to Burns his second year. She testified that McClure was cold and professional to the whole fifth grade. Burns further argues that McClure preferred Fausett because she went to his sons' baptisms, allowed Fausett to attend the San Diego LDS Temple when they were in San Diego, and she did not yell at Fausett. However, none of these alleged preferences relate to Fausett's age. Several of the teachers states that McClure could be heard yelling at various teachers in her office. But her yelling has not been tied to an animus against older teachers. And, there is no evidence that she singled out Burns because of his age. Because McClure did not evaluate Fausett for the administrative openings, there is no evidence that

Next, Burns also appears to argue that the District gave Fausett an advantage because it did not have McClure rate him. There is evidence that McClure was critical of all her teachers and that may support an argument that Fausett's rating would have been lower from McClure than the supervisor who rated him. However, Burns presents no evidence that the District purposely sent Fausett's supervisor rating to a different supervisor. The only evidence in the record is that the supervisor rating was mistakenly sent to a previous supervisor. Most importantly, Burns has not demonstrated how this mistake was related to his age or Fausett's age. Therefore, even though Fausett did not have his two most recent supervisors evaluate him, there is no evidence that the different treatment was related to age.

Burns argues that the evaluation by Ricketts was not fair because she had only worked with him for two months. However, as stated above, Fausett would have been in the same situation. By sending evaluations to applicants two most recent supervisors, many of the applicants could have been in the position of having a new supervisor provide a rating. The fact that Ricketts had only been Burns' supervisor for two months when she provided the rating is not indicative of age discrimination.

Burns argues that he scored highest on the Gallup screener exam, but was not given an interview. In making this argument, however, he neglects to address the fact that the gallup screener exam was only one of four factors evaluated in the first round of the application process. He ignores the fact that Fausett got a higher score on the writing assessment. He has not demonstrated that he was obviously a superior candidate to Fausett.

The evidence shows that the initial screening process was done according to set criteria.

---

McClure preferred Fausett and, even if she did, it did not impact the application process.

All 2007 exams were electronically scored on a 1 to 100 point scale. The writing assessments were graded by two teams of educators on a scale of 0 to 3 (3 = Exemplary, 2 = Satisfactory, 1 = Below Average, 0 = Unsatisfactory). Writing assessments were identified by an assigned number so the evaluators were not able to identify the authors. Kevin Hague and Mike Fraser collected and reviewed all of the applicants' scores. Applicants who scored 80% or higher, at least 240 points, advanced to the second round for an interview. Burns' total score of 207 fell below the threshold for an interview. Fausett, however, had a total score of 258 and qualified for an interview.

     Burns argues that Fausett's experience as a Mormon bishop was considered as managerial experience, whereas his 32 years of experience in various government service positions was not. Burns argues that Fausett's experience as a bishop was considered because one of the interviewers wrote "Mormon bishop" on the interview notes. However, Burns did not have an interview. Therefore, the failure to consider his managerial experience is only a factor of his not making the interview round of the process. No prior management experience was considered in the first round of the application process.[2]

     Burns raises other issues about improper considerations during the interview process. However, Burns did not qualify for an interview because he did not meet the minimum score required by the initial screening. Therefore, even if improper considerations were given to

---

   [2] Moreover, Burns states that one of the District employees testified that he thinks that it would be inappropriate to consider experience as a Mormon bishop. However, there is no evidence that the interviewer who made the notation actually considered his ecclesiastical experience or that the notation was to Fausett's advantage or disadvantage. At most, it demonstrates that Fausett told the interviewers of the experience. Because someone noted "Mormon bishop" on Fausett's interview notes, Burns argues that consideration of Fausett's experience as a bishop is a pretext for discrimination. Burns does not explain how this demonstrates age discrimination.

Fausett or others during the interview round, it is not evidence of age discrimination against Burns. The court concludes that Burns has not demonstrated a prima facie case of age discrimination.

Although the court concludes that Burns has not demonstrated a prima facie case of age discrimination, Burns also argues that he has demonstrated pretext because two of the District employees he deposed gave conflicting answers as to why Burns was not selected for the administrative openings. Bates testified that Plaintiff did not succeed because of his low supervisor ratings. On the other hand, Fraser testified that Burns did not succeed because his comprehensive score was too low to proceed to the next round. While Burns claims that they are inconsistent, the District rightly points out that they are not. Burns' low supervisor evaluation scores made his comprehensive score too low to proceed to the interview round. There is nothing inconsistent about the reasons provided for his failure to advance in the application process. Burns' argument, therefore, does not demonstrate pretext. Accordingly, the court concludes that the District is entitled to summary judgment on Burns' age discrimination claim.

**II. Sexual Harassment--Hostile Environment Claim**

The District also moves for summary judgment on Burns' sexual harassment claim. To establish that a sexually hostile work environment existed, Burns must prove the following elements: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiffs employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).

Burns argues that McClure created a hostile work environment after he announced his marriage to a coworker, leading up to his non-selection for the administrative positions.

15

McClure, however, was not his supervising principal at the time he applied for the administrative openings. She could have only created a hostile work environment while she was the principal at Oquirrh Hills.

Burns' claim fails to meet the third element of a hostile environment sexual harassment claim–that the harassment be based on sex. Hostile work environment claims are not a general civility code, the claim must be tied to sexual harassment. Burns testified that the harassment was not sexual in nature, only criticisms of his performance. Burns alleges that McClure began to nitpick his performance because he married another woman at the school. But a heightened criticism of his performance is not prohibited by Title VII. Moreover, Burns testified that McClure was critical of all the teachers and she repeatedly drove both male and female teachers out of the school. Therefore, the court concludes that Burns has not demonstrated that the hostile environment was based on sex.

The parties have addressed the severe and pervasive prong under three general categories: (1) McClure's alleged interest in Burns; (2) McClure's alleged sexually charged comments; and (3) McClure's heightened criticism of his work after he married a co-worker. First, there is no direct evidence that McClure was interested in Burns. Burns claims that she was because she looked at him with interested eyes and asked him about his plans for the weekend. He considered her asking about his weekend plans to be implied marriage proposals. Burns testified that there was 'no doubt in his mind" where she was going with their relationship. However, he admits that she never directly stated that she had any interest in him and never asked him on a date. Burns also stated that McClure was "always there" when they went to a teacher training in San Diego. However, all of these things amount to Defendant's subjective belief that she may have been interested. Another teacher testified that based on hallway talk and in her opinion,

16

McClure appeared interested in Burns.  However, McClure never stated anything to him that would indicate interest and never asked him on a date.  There is no basis for finding a severe and pervasive hostile work environment under these facts.

Second, claims that the hostile environment was severe and pervasive based on McClure's comments.  Burns states that McClure made comments about men's tight pants and the length of his toes.  The comments themselves do not demonstrate sexual harassment.  Only Burns' belief in where the comment "was going," makes them sexual in nature.  McClure allegedly made random criticisms of men, but there is no evidence that those comments were so frequent as to be severe or pervasive.  In addition, Burns claims that McClure told other teachers jokes about men.  But, importantly, she never told them to Burns.  Therefore, the jokes did not contribute to a hostile environment for Burns.[3]

Third, Burns claims that McClure became more critical of his performance after his marriage because she was a scorned woman.  As stated several times before, Burns testified that she was critical of all the teachers.  Other teachers stated that she had a harsh style and wanted things done her own way.  Burns was not singled out for critical treatment.  Criticism from a

---

[3] Burns' string of arguments in his briefing regarding McClure's conduct seriously distorts the record.  The court cautions Burns' attorney to be more careful in his references to deposition testimony.  The testimony regarding short skirts and being able to see someone's crotch was in regard to another teacher at the school, not McClure.  Burns testified that the sexual jokes were made to another teacher, not to him.  Burns did not testify that McClure ever stated the word "package" or that tight pants made her excited.  Burns testified that she said the tight pants were inappropriate and they should wear loser pants.  It was Burns who testified that he believed that "where she was going with it" was that she was looking at their "package" and excited by it.  That was his subjective belief of what she may have been thinking, not what she said.  In addition, he did the same thing with the "long toes" incident.  Burns testified that McClure only stated that he had long toes.  It was Burns who testified that where he thought she "was going with it" was that other parts of his body would also be long.  Counsel must be careful to attribute the right statements, beliefs, and conduct to the right person, especially in a case involving or alleging such personal matters.

direct supervisor is not actionable.  As observed by the Tenth Circuit Court of Appeals, "Normal job stress does not constitute a hostile or abusive work environment . . . [F]ederal law 'does not guarantee a utopian workplace, or even a pleasant one . . . [P]ersonality conflicts between employees are not the business of the federal courts . . ..'" *Trujillo*, 157 F.3d at 1211, 1214 (10th Cir. 1998) (citing *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164 (7th Cir. 1994)).

The court concludes that Burns has not established a sexual harassment hostile environment claim because the alleged conduct was not based on sex and the alleged conduct was not sufficiently severe or pervasive to alter the terms and conditions of his employment. Accordingly, the court grants the District's motion for summary judgment on Burns' sexual harassment claim.

**Burns' Motions to Strike and for Sanctions**

**I.  Motion to Strike Overlength Portion of Summary Judgment Brief**

The court ruled at the hearing that Burns erroneously concluded that the District's summary judgment brief was overlength because it was a total of 35 pages.  However, as the court explained, under this district's local rules, the fact section does not count toward the 25-page limit.  Therefore, the District's brief is well within the 25-page limit and it did not need leave to file an overlength memorandum.

**II.  Motion to Strike Delaration of McNeil-Waters**

The court also denied this motion to strike at the hearing.  Burns argues that the declaration should be stricken because the District did not identify McNeil-Waters as a person with discoverable information and, therefore, he did not depose her.  The District, however, used her declaration only to enter the District's business records because she is the District's current custodian of records.  She does not have discoverable information and there is no basis for

striking her declaration.

### III. Sanctions for Spoliation

Burns argues that the District should be subjected to sanctions in this case because it destroyed some of its documents regarding the application process. At a deposition conducted a day after the close of discovery, Burns' counsel verbally requested the applicant files of the eleven successful candidates who were selected for the administrative openings in 2007. The District only retained the complete files of Burns and Fausett and a spreadsheet compilation of the scores from the initial screening process.

The electronic record of all the applicants' scores were produced to Burns on a spreadsheet, which shows that the successful applicants scored higher than 240 in the initial round. If Burns seeks to argue other candidates were treated differently based on their scores, the spreadsheet contains those scores. The material facts are that the District set the threshold score at 240 points and Burns failed to reach that score. Burns was eliminated from the selection process based solely on his score. Thus, it does not matter what other candidates scored.

The District retained the complete files of Burns and Fausett because Burns' administrative complaint identified Fausett as someone similarly situated. Fausett continues to be the applicant Burns contends is similarly situated. Therefore, the non-disclosure of the other applicant files is harmless. Accordingly, the court denies Burns' request for sanctions against the District.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion and Memorandum in Opposition to Defendant's Motion for Summary Judgment, Motion to Strike, and Motion in Limine is DENIED. Because this ruling

disposes of all of Plaintiff's claims, the Clerk of Court is directed to enter judgment for Defendant and the close the case. Due to the particular circumstances presented by the case, the court finds that each party shall bear his and its own fees and costs. Although Defendant has prevailed on summary judgment, the court finds that Plaintiff's case was not frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

DATED this 14th day of October, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge